IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 19, 2014 Session[1]

## IN RE JUSTIN A. H.

JUSTIN A. H., BY AND THROUGH HIS NEXT FRIENDS, WORLD
ASSOCIATION FOR CHILDREN AND PARENTS AND LEONID
LVOVICH MITYAEV, AS THE LEGAL CUSTODIAN OF THE MINOR CHILD,
AND THE WORLD ASSOCIATION FOR CHILDREN AND PARENTS,
AND NATIONAL COUNCIL FOR ADOPTION, AS THE DESIGNATED
LIAISON FOR LEONID LVOVICH MITYAEV, THE
LEGAL CUSTODIAN OF THE MINOR CHILD IN MOSCOW
v.
TORRY HANSEN

An Appeal from the Circuit Court for Bedford County
No. 12062     Franklin L. Russell, Judge

No. M2013-00292-COA-R3-CV - Filed July 7, 2014

This is a petition for dependency and neglect, child support, and breach of contract arising out of an international adoption. The respondent adopted the subject child from Russia. A few months later, after experiencing difficulties with the child, she placed the child on a one-way flight to Russia and sought to annul the adoption. The adoption agency that brokered the adoption filed this lawsuit against the respondent in juvenile court, seeking child support and alleging that the child was dependent and neglected. The juvenile court dismissed the case, and the case was appealed to the circuit court below. On appeal to circuit court, the petition was amended to add the child as a petitioner and to seek child support and damages arising out of the adoption contract. After protracted proceedings, the trial court granted the petitioners' motion for default judgment against the respondent for failing to file an answer to the petition and failing to cooperate in discovery. The trial court later conducted a hearing on damages, at which the respondent did not appear. The trial court awarded damages to the petitioners and ordered the respondent to pay child support. It later denied the respondent's

---

[1]At oral argument, the parties were ordered to provide supplemental briefs on the issue of subject matter jurisdiction. The supplemental briefing was completed on April 21, 2014.

motions for post-judgment relief. The respondent now appeals. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Jennifer Lynn Thompson, Nashville, Tennessee, for the Defendant/Appellant, Torry Hansen[2]

Larry L. Crain, Brentwood, Tennessee, for the Plaintiff/Appellee, Justin Hansen, by and through his next friends, World Association for Children and Parents and Leonid Lvovich Mityaev,[3] as the Legal Custodian of the minor child, and the World Association for Children and Parents, and National Council for Adoption, as the Designated Liaison for Leonid Lvovich Mityaev, the Legal Custodian of the minor child in Moscow

## MEMORANDUM OPINION[4]

### FACTS AND PROCEEDINGS BELOW

The procedural history in this case is convoluted and complicated by the fact that separate legal proceedings took place in Russia. We will endeavor to simplify and streamline our presentation of the facts.

---

[2]Appellant Hansen was formerly represented by Edward M. Yarbrough and D. Gil Schuette, but they were permitted to withdraw after the appellate briefs were filed in this case.

[3]Mr. Mityaev's surname has been spelled various ways in the record and in the documents filed by the parties. In this opinion, we will spell his name "Mityaev," as it was spelled in the first documents filed in his name in the trial court.

[4]**Rule 10. Memorandum Opinion**

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Tenn. Ct. App. R. 10.

## Adoption

The child at issue in this lawsuit, Petitioner/Appellee Justin A. H., was born in Russia in April 2002.[5] In 2009, Defendant/Appellant Torry Hansen sought to adopt Justin through Russian adoption procedures. The World Association for Children and Parents ("WACAP"), based in the State of Washington, was the adoption and placement agency that processed Justin's adoption.[6]

As part of the adoption process, WACAP and Ms. Hansen entered into a "Child Acceptance and Placement & Post-Placement Agreement" ("Placement Agreement"). In the Placement Agreement, WACAP agreed to provide Ms. Hansen with all of the information it had about the child, but it did not "guarantee the present or future mental or physical health of the child(ren)." In turn, Ms. Hansen agreed to "remain financially responsible for all costs of care for the child(ren)" if the child were removed from Ms. Hansen's home. Ms. Hansen agreed to "reimburse WACAP for any and all costs incurred by WACAP for the care of the child after removal from [Ms. Hansen's] home."

On September 18, 2009, Ms. Hansen officially adopted Justin in proceedings before the Primorsky Krai Court of the Russian Federation.[7] By virtue of the adoption, Justin became a United States citizen. Ms. Hansen then returned to the United States with the child to live in Bedford County, Tennessee.

Not long after Ms. Hansen returned to Tennessee with Justin, she began experiencing behavioral difficulties with the child. She was unable to handle those difficulties, so Ms. Hansen took steps to reverse or annul the adoption.

## Child Returned to Russia

In April 2010, Justin was taken to Dulles Airport in Virginia and placed on a one-way flight to Russia. On the transnational flight, the child was unaccompanied and had no provisions and no luggage, only a backpack. Ms. Hansen pinned a note to the child's backpack

---

[5]Justin's birth name is Artem Vladimirovich Saveliev.

[6]WACAP is a licensed child adoption and placement agency within the meaning of Tennessee Code Annotated § 36-1-113, licensed by the State of Washington, with its principal offices located in Washington. It was founded in April 1976 as a non-profit adoption agency, specializing in international placement and adoption of children with parents in the United States.

[7]The parental rights of Justin's biological mother were terminated in August 2008, and none of his relatives were willing or able to take him into their home.

addressed to the Ministry of Education in Moscow. The note described Justin as "mentally unstable" and asserted that Ms. Hansen was "lied to and misled by the Russian Orphanage workers and director regarding his mental stability and other issues." For those reasons, Ms. Hansen said, she no longer wanted to parent the child. In the note, Ms. Hansen indicated that she was "returning [the child] to [the Ministry of Education's] guardianship and would like the adoption disannulled [sic]." Ms. Hansen had arranged for a third party in Russia to pick up Justin at the airport in Moscow and take him to the Ministry of Education. After the child was delivered to the Ministry, he was placed in a Russian children's home/orphanage.

On April 20, 2010, the City Council of the Tverskoy Intra-City Municipality in the City of Moscow in Russia filed a petition in a Moscow City Court seeking to annul or "revoke" Justin's adoption. Ms. Hansen was named as a defendant. The petition was later amended to include a request on behalf of the child that Ms. Hansen be required to pay child support. Ms. Hansen filed a counterclaim in that action. In her counterclaim, Ms. Hansen sought a "no-fault" annulment, that is, an annulment granted "through no fault of the adoptive parent."

**Tennessee Lawsuit**

On May 11, 2010, WACAP filed a petition in the Circuit Court of Bedford County, Tennessee, against Ms. Hansen and her mother, Nancy Hansen Gishere (collectively, "Respondents"). The petition was entitled "Verified Petition for Appointment of Guardian and Guardian *Ad Litem*." WACAP asserted in the petition that the Respondents had abandoned the child and asked the court to conduct a hearing to determine whether the child was dependent and neglected. WACAP asked the trial court to appoint it as the child's guardian. WACAP also asked the trial court to appoint a guardian ad litem ("GAL") to consider whether to seek child support and other relief for the child.[8]

The Bedford County circuit court lawsuit generated widespread media attention. Ms. Hansen in particular was vilified. On May 19, 2010, shortly after she was served with process in the circuit court lawsuit, Ms. Hansen relocated from Tennessee to an undisclosed location in California.

---

[8]Contemporaneously, the National Council for Adoption (*see infra* note 9) filed an "Amicus Petition," in which it asked the trial court to grant the relief requested in WACAP's petition. Though denoted as a petition, it is essentially an amicus brief. The "Amicus Petition" was apparently dismissed or abandoned at some point during the lower court proceedings. In any event, it is not at issue in this appeal and does not affect our analysis.

-4-

On July 19, 2010, WACAP filed an amended petition in circuit court. The amended petition added Jennifer Terhune, an adoptive mother of three children, all born outside of the United States, as a petitioner. In the prayer for relief, the petitioners asked the Juvenile Court to (1) appoint a GAL to make recommendations on abandonment, child support, and termination of Ms. Hansen's parental rights; (2) determine whether the child is dependent and neglected; (3) hold that Ms. Hansen breached her obligations under the Placement Agreement and the Russian decree of adoption; and (4) appoint Ms. Terhune as the guardian for the child.

WACAP filed a motion to transfer the circuit court case to the Juvenile Court of Bedford County because it included a dependency and neglect petition and, under Tennessee Code Annotated § 37-1-103, the juvenile courts have exclusive jurisdiction over dependency and neglect actions. By agreement of the parties, the case was transferred to the Bedford County Juvenile Court.

On October 11, 2010, WACAP and Ms. Terhune filed a motion in the juvenile court for permission to file a second amended petition. The second amended petition added as a petitioner the National Council for Adoption ("Adoption Council"),[9] the designated liaison for Leonid Lvovich Mityaev, the director of the orphanage in which the child was residing. The Adoption Council asserted that Mr. Mityaev, as the child's representative, had authorized it to serve as liaison on Mr. Mityaev's behalf to seek an order requiring Ms. Hansen to pay child support. Basically, the second amended petition sought the same relief as the prior petition, except that it included a direct request for child support for Justin through the Adoption Council as the liaison for the child's representative, Mr. Mityaev.

On December 28, 2010, the Respondents filed a motion to dismiss for lack of jurisdiction. They claimed that Tennessee was not the child's "home state" under the relevant statutes, and that the termination proceedings in Russia precluded the juvenile court from exercising jurisdiction over the dependency and neglect proceedings. Even if the juvenile court had subject matter jurisdiction over the dependency and neglect action, the Respondents argued, it should decline to exercise jurisdiction over the case because Tennessee was an inconvenient forum. *See* Tenn. Code Ann. § 36-6-222(a) (2010). "Because these actions contain common legal issues, it is clear that they both cannot be simultaneously maintained . . . ." Lastly, the Respondents argued that, even if the juvenile court had subject matter

---

[9]The Adoption Council describes itself as "the leading national adoption advocacy nonprofit, incorporated in Texas with members throughout the United States." Located in Alexandria, Virginia, the Adoption Council claims that "[i]ts focus is infant adoption out of foster care and inter-country adoption. It serves children, birthparents, adoptive families, adoption agencies, U.S. and foreign governments, policymakers, media, and the general public as the authoritative voice for adoption."

jurisdiction, under the circumstances presented, the juvenile court could not award child support.

The Petitioners filed a memorandum in support of their position that the juvenile court had jurisdiction over the matter.[10] They argued that the Tennessee juvenile court had jurisdiction over the lawsuit because (1) the child was a citizen and resident of Tennessee when the acts at issue were committed, and (2) Tennessee, not Russia, has jurisdiction over the child support issue. They contended that the Tennessee juvenile court had personal jurisdiction over Ms. Hansen under Tennessee Code Annotated § 39-15-401(d)(2), so it could hold Ms. Hansen liable for criminal abuse or neglect of the child.

Subsequently, the Respondents filed a "comprehensive" motion to dismiss. The motion made additional arguments in support of their original motion to dismiss.

On May 2, 2011, the Petitioners filed a "Notice of Filing Re: Russian Proceedings." This notice indicated that, on April 4, 2011, the Moscow City Court issued a decision in the pending Russian proceedings. In its decision, the Moscow City Court indicated that the original suit for annulment and child support had been voluntarily dismissed and that, after an evidentiary hearing, the court had rejected Ms. Hansen's counterclaim for a no-fault annulment.[11] The Moscow City Court stated that the manner in which Ms. Hansen returned the child to Russia inflicted "psycho trauma" on the child, and that Ms. Hansen's "behavior . . . cannot be found innocent."

### Juvenile Court Decision

On June 24, 2011, the juvenile court below entered an order dismissing the Petitioners' petition *in toto*. The order characterized the petition as largely a "dependency and neglect" proceeding and said that the Petitioners' breach of contract claims were "not under the jurisdiction of this Court." The order added, "[I]t is the Court's understanding that those particular issues [claims based in contract] are withdrawn" by the Petitioners.[12] Addressing the dependency and neglect claim, the order said that the juvenile court had received "disturbing" *ex parte* communications from a Russian official, informing the juvenile court

---

[10]This pleading was filed before the Respondents filed their motion to dismiss, apparently in anticipation of the Respondents' motion.

[11]Ms. Hansen was represented by counsel in the Moscow City Court, but she did not attend those proceedings.

[12]It is unclear from the record whether the juvenile court granted the Petitioners permission to file the second amended petition.

that the Russian government had suspended the Russian termination proceeding so as not to interfere with the Tennessee petition filed by the Petitioners to obtain child support. The juvenile court described the decision to suspend the Russian proceedings in order to make way for a child support claim as "a concept that is foreign to the American philosophy of obtaining permanency for our children." Overall, the juvenile court concluded that it was not "in the best interest of the child nor the public for this proceeding to continue," and so dismissed the petition.

### Russian Federation Supreme Court Decision

Meanwhile, unbeknownst to either the parties or the juvenile court, on June 7, 2011, the Russian Federation Supreme Court had issued a decision vacating the Moscow City Court's April 4, 2011 order. In its decision, the Russian Federation Supreme Court annulled Ms. Hansen's adoption of the child. It upheld the lower court's finding of "cruel treatment by Torry Ann Hansen of [the] minor child" but reversed the dismissal of the suit for annulment, finding that dismissal on these facts "violates norms of substantive law." It reasoned that annulment of an adoption is "aimed at terminating the legal relationship with the adoptive parent . . . when the adoption is no longer in the interests of the child." Thus, the Russian Federation Supreme Court overturned the decision of the Moscow City Court and granted the annulment. It rejected Ms. Hansen's request to denote the annulment as "no-fault."

### Appeal to Circuit Court

On July 8, 2011, the Petitioners filed a notice of appeal to the circuit court below, seeking a *de novo* review of the juvenile court's decision. Around that time, Attorney Jennifer Lynn Thompson, counsel for Respondents, filed a motion to withdraw.

On July 28, 2011, the circuit court below held a hearing. The appellate record does not include a transcript of that hearing. The record reflects that the Respondents did not attend the hearing and were not represented at the hearing. On August 8, 2011, the trial court entered an order granting Attorney Thompson's motion to withdraw and setting the case for trial on September 5, 2011.

On August 11, 2011, the Petitioners filed a motion to compel the Respondents to appear for a deposition, because they both had failed to appear for a deposition that had been noticed for August 2, 2011, in Brentwood, Tennessee.[13] The Petitioners' motion asserted, "This was

---

[13]The deposition notice attached to the motion indicates that the Respondents were notified of the scheduled deposition by service on Attorney Thompson, apparently prior to entry of the order permitting Attorney
(continued...)

the <u>second</u> <u>time</u> the Respondents failed to appear for a previously noticed deposition." (Emphasis in original).

On August 17, 2011, Attorney Sandra L. M. Smith filed a notice of appearance on behalf of the Respondents. At her request, the scheduled trial was continued.

## Motion to Amend Petition in Circuit Court

On September 14, 2011, the Petitioners filed a motion in the trial court below for leave to file an amended petition. At the same time, they filed the proposed amended petition. The proposed amendment added as Petitioners WACAP, on its own behalf, as well as Justin "by and through his next friends" WACAP and Leonid Lvovich Mityaev "as the Legal Custodian of the minor child." As the designated liaison for Mr. Mityaev, the Adoption Council was also added as a Petitioner. The amended petition stated that Mr. Mityaev "is the Russian official who serves as [the child's] legal custodian in Russia," and that Mr. Mityaev "has consented to serve as next friend for the minor child in seeking on his behalf" child support from Ms. Hansen. The amended petition included all of the claims asserted against Ms. Hansen in the juvenile court pleadings, and it specifically included a breach of contract claim against her. The amended petition named only Ms. Hansen as a Respondent; her mother Ms. Gishere was not named. The Respondents objected to the motion to amend.

On September 21, 2011, the Respondents filed a motion to dismiss the amended petition. The motion to dismiss claimed, among other things, that the Tennessee circuit court did not have jurisdiction over the case because Ms. Hansen's relationship with the child had been nullified by the Russian Federation Supreme Court's June 7, 2011 decision to annul the adoption.

On November 14, 2011, the Respondents filed an amended and supplemental motion to dismiss, as well as an amended and supplemental memorandum of law in support. Also on November 14, 2011, the Respondents filed an amended and supplemental response/objection to the Petitioners' motion for leave to file an amended petition. The Petitioners filed responses to those new filings.

---

[13](...continued)
Thompson to withdraw from representing the Respondents.

**Motion to Amend Granted**

On November 21, 2011, the trial court held a hearing on the motion to amend. Ms. Hansen was represented by Attorney Smith at the hearing, but Ms. Hansen herself did not appear. According to Attorney Smith, the Respondents did not object to the amendment of the petition, except insofar as they objected to the addition of party petitioners, specifically Mr. Mityaev and the Adoption Council as liaison for Mr. Mityaev. At the conclusion of the hearing, the trial court granted the motion to amend the petition. The trial court noted that this ruling rendered moot the Respondents' motions to dismiss.

During the November 21, 2011 hearing, the trial court asked counsel for the parties about the status of discovery. The Petitioners told the trial court that, since June 2011, Ms. Hansen and Ms. Gishere had failed to appear for two scheduled depositions. They also told the trial court that written discovery propounded in approximately July 2011 had not been answered. The Petitioners told the trial court that they "desperately need[ed] to depose the Hansens" and asked the trial court to set a date for their depositions. The trial court commented, "If folks don't come to their depositions, then there are consequences." The trial court gave the parties time during the hearing to confer to schedule depositions and agree on a trial date.

A few days after the hearing, on November 28, 2011, the Petitioners propounded written discovery requests to Ms. Hansen. Apparently Ms. Hansen never answered them.

**Petitioners' Motion to Set and Motion to Compel**

On January 10, 2012, the Petitioners filed two motions, namely, a motion to compel Ms. Hansen to respond to the outstanding written discovery requests and a motion to set the case for trial on March 27, 2012. On January 11, 2012, the Petitioners served upon Ms. Hansen and Ms. Gishere a notice to take their depositions on February 2, 2012.

On January 25, 2012, Ms. Hansen filed a motion to quash. Ms. Hansen asserted that neither she nor Attorney Smith were available on February 2, 2012, so the notice of her deposition should be quashed. Due to the distance, burden, and expense of traveling to Tennessee, Ms. Hansen asked the trial court to grant her permission to give her testimony via telephone, video, or some other media. She also asked the trial court to quash the deposition notice for her mother, Ms. Gishere, because Ms. Gishere was no longer a party.

Ms. Hansen filed four other pleadings on January 25, 2012. First, she filed a motion to register the decree entered by the Russian Federation Supreme Court, asking the trial court to give it full faith and credit. Second, Ms. Hansen filed a supplemental response to the Petitioners' motion to compel and motion to set the trial date; she claimed that she was

diligently searching for the documents requested in discovery and that setting a trial date was premature. Third, Ms. Hansen filed a motion to dismiss for lack of proper venue. Fourth and finally, Ms. Hansen filed a request to access the court file. She said that, because some of the court file documents were sealed, she had been unable to review the court file fully. Ms. Hansen claimed that this had hindered her ability to understand the procedural history of the case and fully respond to opposing counsel.

## First Hearing

On February 1, 2012, the trial court conducted a hearing on the Petitioners' motion to compel discovery, motion to set the trial date, and other outstanding items. At that time, Ms. Hansen still had not responded to the written discovery propounded in November 2011. Ms. Hansen also maintained that neither she nor her counsel were available for her deposition scheduled for the next day. At the hearing, the trial court ordered Ms. Hansen to respond to the written interrogatories within 15 days of the hearing. The trial court also rescheduled Ms. Hansen's deposition for February 20, 2012. The trial court suggested that the parties try to take Ms. Hansen's deposition by an alternative method so she would not have to travel to Tennessee. However, if the parties could not work out an alternative method, the trial court said, an in-person deposition in Tennessee on the scheduled date would be required. The parties were directed to work together to agree on a comprehensive scheduling order with expert disclosure deadlines, deposition deadlines, a trial date, and the like. The trial court deferred ruling on the other pending motions until after discovery was completed.

After the hearing, the parties agreed on a scheduling order. Attorney Smith mailed the scheduling order to Ms. Hansen at her last known address.

A few days later, on approximately February 6, 2012, Ms. Hansen terminated the services of Attorney Smith. Consequently, Attorney Smith filed a motion to withdraw as counsel for Ms. Hansen.[14]

## Second Hearing

On February 23, 2012, the trial court conducted a hearing on Attorney Smith's motion to withdraw and related matters. Attorney Smith was present at the hearing, but Ms. Hansen was not. The trial court informed those present that Ms. Hansen, representing herself, had sent the trial court two letters, through the clerk's office, requesting court-appointed counsel. The trial court stated at the hearing that it did not consider Ms. Hansen's letters to be legitimate requests for counsel. Attorney Smith confirmed that Ms. Hansen knew about the

---

[14]Attorney Smith's motion to withdraw is not included in the appellate record.

-10-

hearing and about Attorney Smith's motion to withdraw. Attorney Smith confirmed that Ms. Hansen was notified that she had been ordered to provide opposing counsel her responses to the outstanding written discovery by February 15, 2012, and that Ms. Hansen was notified that she was required to appear for her deposition on February 20, 2012, and Ms. Hansen had done neither of those things. The trial court expressed concern that Ms. Hansen was "abandoning" the litigation and her pretrial discovery obligations:

> [O]bviously my concern is this. And there's an allegation that she abandoned her child. That has not been determined. We haven't even had any evidence . . . in this forum on that, so I have no conclusions about that, but I am concerned that she is sort of conditionally abandoning the litigation. She has three times not shown up for a deposition. So regardless of whether the child was abandoned, it appears to me that she is to a degree abandoning, at least, the discovery process.

Counsel for the Petitioners indicated at the hearing that they had filed a motion for sanctions against Ms. Hansen based on her failure to file an answer to the amended complaint and her failure to appear for three noticed depositions, and that they also filed a motion for default judgment based on her failure to file an answer to the amended complaint.[15] A hearing on the Petitioners' motion was set for March 7, 2012. Counsel for the Petitioners suggested that the trial court use the scheduled hearing as the date on which Ms. Hansen must "put up or shut up" in the defense of her case.

At the conclusion of the hearing, the trial court issued an oral ruling granting Attorney Smith's motion to withdraw. It further ruled that Ms. Hansen would be required to personally appear at the March 7, 2012 hearing "and to be prepared to address, among other things, the issue of whether or not counsel should be appointed" for her. The trial court added: "So she must physically be present, and I want that unambiguous [in the order] that a letter to the judge, a fax to the judge, or a call to my friends at the Times Gazette will not be accepted in lieu of her physical appearance in that courtroom . . . ."

On the same day, the trial court entered a written order permitting Attorney Smith to withdraw. The written order stated expressly that, on March 7, 2012, Ms. Hansen would be required to appear "in person before this court regarding any request by her for court-appointed counsel; the court shall not accept, in lieu of her personal appearance[,] any other form of communication from Tory [sic] Hansen." The order directed Attorney Smith to provide the Petitioners and the trial court Ms. Hansen's personal contact information by

---

[15]The motion for default judgment referred to in the hearing is not in the appellate record.

March 22, 2012.[16]  The order continued all other pending matters until March 7, 2012.  As her final task in representing Ms. Hansen, Attorney Smith was directed to mail Ms. Hansen a copy of the trial court's order.

Ms. Hansen received the order entered after the February 23, 2012 hearing.  She did not respond favorably.  On March 6, 2012, Ms. Hansen, acting *pro se*, sent a letter to the court clerk.  She said that the purpose of the letter was "to safeguard my legal and constitutional rights."  The letter acknowledged that, in February 2012, Ms. Hansen had been noticed to appear at a deposition in Tennessee, and also acknowledged that the trial court had ordered Ms. Hansen to appear in court on March 7, 2012.  Ms. Hansen claimed that she had not been available to appear in Tennessee for the February 2012 deposition, and would not be available to appear for the March 7, 2012 hearing because of "financial hardship and standing of the petitioners to pursue this lawsuit."  She argued that it was "oppressive" for the trial court to require her to travel to Tennessee, and also asserted that "the Petitioners have no legal authority to obtain sensitive and invasive information from me."  Ms. Hansen said in her letter that she had twice requested via fax the "paperwork" necessary to file a motion for a court-appointed attorney but had received no response to these requests; the letter to the court clerk included another request asking that the clerk send her this "paperwork."  Ms. Hansen insisted in the letter that the trial court had a duty to address her argument that the Petitioners did not have standing to pursue this lawsuit, and that it also had a duty to appoint a GAL for the child.  She accused the trial judge of bias, alleged he conspired with counsel for the Petitioners, and asserted other unspecified judicial misconduct.  As a result, Ms. Hansen claimed, she could not get a fair trial.  Ms. Hansen's letter declared:  "The court cannot make an 'unprecedented' ruling if it means breaking Federal and State law and abusing my due process and constitutional rights in order to do so.  Default or not a judgment will not stand if made due to fraud or abuse of judicial power."

## Default Judgment Granted

On March 7, 2012, the trial court conducted the hearing on the motion for default judgment as scheduled.  Ms. Hansen did not appear at the hearing and did not have counsel present at the hearing; however, she retained a court reporter to record it.  At the conclusion of the hearing, the trial court rendered an oral ruling granting the Petitioners a default judgment against Ms. Hansen:

---

[16]At the hearing, Attorney Smith informed the trial court that Ms. Hansen's contact information was given to her in confidence.  Attorney Smith, therefore, took the position that the information was protected by the attorney-client privilege.  Counsel for the Petitioners pointed out that the outstanding written discovery included a request for Ms. Hansen's contact information, and that Ms. Hansen had thus far refused to provide the information.

So both as a sanction for the failure to cooperate in the discovery process and also in the form of a default judgment for failure to file a responsive pleading, I am granting the relief sought.

I am finding her to be liable and precluding her from presenting, at a future hearing, any testimony, any evidence, on the issue of liability. However, we still have the issue of damages.

. . .

[Ms. Hansen] has chosen not to participate in the process. And I don't know how we can wait any longer on that and hope to get justice to your clients. So we're going to proceed in this manner.

Thus, the trial court granted the default judgment both as a sanction for failing to cooperate in discovery and as a consequence of failing to file a responsive pleading to the amended petition.

On the same day, the trial court entered a written order consistent with its oral ruling. It held Ms. Hansen in contempt of court for failing to comply with the February 23, 2012 order that required her to appear in person for the hearing on her request for court-appointed counsel. It found that default judgment was warranted in light of Ms. Hansen's failure to file a responsive pleading to the November 2011 amended petition, failure to appear for a properly noticed deposition on February 20, 2012, and failure to respond to written discovery requests by the established deadline. Pursuant to Rule 37 of the Tennessee Rules of Civil Procedure, the trial court granted the Petitioners' request for discovery sanctions in the form of attorney fees,[17] and it also granted the Petitioners' motion for a protective order. A hearing on the issue of damages was set for May 17, 2012.

Ms. Hansen then attempted a collateral attack on the Tennessee default judgment against her. On April 18, 2012, she filed a lawsuit in California state court against Mr. Mityaev and other Russian representatives. In her complaint, Ms. Hansen asked the California court to register and enforce the June 7, 2011 decision of the Russian Federation Supreme Court, arguing that it is conclusive on all of the issues pending in the instant Tennessee lawsuit. In the California

---

[17]On March 12, 2012, the trial court entered an order granting the Petitioners' request for attorney fees and expenses of $4,963 charged by local counsel. The trial court later entered an order granting the Petitioners attorney fees of $765 for the amount paid to out-of-town co-counsel.

proceedings, Ms. Hansen claimed that, to the extent that the Tennessee court's decisions conflict with the order of the Russian court, the order of the Russian court should control.[18]

### Hearing on Damages

On May 17, 2012, the Tennessee trial court conducted its hearing on damages, as scheduled. Again, Ms. Hansen was not represented by counsel at the hearing and did not appear, but she retained a court reporter to record the proceedings. At the hearing, the Petitioners submitted proof of the expenses incurred by WACAP as a result of Ms. Hansen's breach of her Placement Agreement. Evidence was also submitted regarding amounts due to the child for his care and maintenance.

On May 18, 2012, the trial court issued a written order awarding damages to the Petitioners. Taking the factual allegations in the petition as true, and in light of the undisputed evidence submitted at trial, the trial court held that the damages to the child caused by Ms. Hansen's breach of the Placement Agreement at the time of the hearing totaled $58,240.46. The trial court held that Ms. Hansen owed this amount to the child as the third-party beneficiary of the Placement Agreement between Ms. Hansen and WACAP. The trial court found that the child "shall remain in need of future care, maintenance and support going forward until he reaches the majority age of eighteen, or is re-adopted." Consequently, the trial court held the child to be dependent and neglected. Based on Ms. Hansen's income at the time she adopted the child, the trial court ordered Ms. Hansen to pay $1,000 per month in child support. *See* Tenn. Code Ann. § 36-5-101(b)(2). The trial court ordered Ms. Hansen to deposit the amounts owed in a Russian bank account established for the benefit of the child.

The trial court awarded WACAP $28,361 for the damages suffered directly as a result of Ms. Hansen's abandonment of the child. In addition, pursuant to an attorney fee provision in the Placement Agreement, the trial awarded WACAP $62,735 in attorney fees incurred to enforce the Placement Agreement.[19]

Thus, in sum, the trial court awarded $58,240.46 in damages to the child, awarded $91,996 in damages and attorney fees to WACAP, and ordered Ms. Hansen to pay child support of $1,000 per month.

---

[18]The record does not indicate the resolution of the California litigation.

[19]This amount included the $4,963 awarded to counsel for the Petitioners in the March 12, 2012 order.

## Post-Judgment Motions

On June 15, 2012, Attorney Edward M. Yarbrough entered an appearance in the trial court on behalf of Ms. Hansen. On the same day, Mr. Yarbrough filed two post-judgment motions on Ms. Hansen's behalf: a motion to set aside the March 7, 2012 default judgment pursuant to Tenn. R. Civ. P. 55.02 and 60.02, and a motion to alter or amend the May 18, 2012 judgment pursuant to Tenn. R. Civ P. 59. In the motions, Ms. Hansen argued that, because of the default judgment, the May 18, 2012 final order was based on proof presented only by the Petitioners; consequently, the final order should be altered or amended. Ms. Hansen contended that many excusable factors led to the entry of default judgment

> including financial hardship, inadequate counsel (and lack of counsel at critical times), child care issues, medical issues, insufficient notice to allow her to travel to Tennessee, a misunderstanding of the Court's order regarding the appearance in February, and an undue amount of fear related to all of these factors and the extreme publicity surrounding her case.

If the default judgment were set aside and Ms. Hansen were allowed to present proof, she maintained, the trial court would learn that there have been "dramatic changes in her financial condition" as well as "other factors" that would materially alter the court's assessment of the case and result in a different holding. In support of her arguments, Ms. Hansen attached her own affidavit.

On July 13, 2012, the trial court held a hearing on Ms. Hansen's post-judgment motions. The appellate record does not include a transcript of that hearing. On July 19, 2012, the trial court entered a written order on the motions. In the order, the trial court found affirmatively that Ms. Hansen's failure to file an answer to the amended petition, failure to answer written discovery, failure to appear for her deposition, and failure to appear at the March 7, 2012 hearing were all willful. It held that Ms. Hansen had not shown a likelihood of success on the dependency and neglect claim, and that the Petitioners would suffer significant prejudice if the trial court set aside the default judgment. For these reasons, the trial court denied Ms. Hansen's motion to set aside the default judgment and her motion to alter or amend the final order.

From this order, Ms. Hansen now appeals.

### ISSUES ON APPEAL

In her appellate brief, Ms. Hansen argues that the trial court erred in denying her post-judgment motions, namely, the motion to set aside the default judgment pursuant to Rules

55.02 and 60.02, and the motion to alter or amend the final order pursuant to Rule 59. At oral argument, Ms. Hansen argued that neither the juvenile court nor the circuit court had subject matter jurisdiction, so all of the orders of both courts should be deemed void, and the appellate court should dismiss this appeal.

## ANALYSIS

### Subject Matter Jurisdiction

We first address the threshold issue of subject matter jurisdiction. The concept of subject matter jurisdiction implicates a court's authority to hear a given matter. "The concept of subject matter jurisdiction involves a court's power to adjudicate a particular type of controversy." *Dishmon v. Shelby State Comm. College*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999). "Courts derive their subject matter jurisdiction from the Constitution of Tennessee or from legislative act and cannot exercise jurisdictional powers that have not been conferred directly on them expressly or by necessary implication." *Id.* (citations and internal citations omitted). "[P]arties cannot confer subject matter jurisdiction on a trial or an appellate court by appearance, plea, consent, silence, or waiver," and "orders entered by courts without subject matter jurisdiction are void." *Id.*

The issue of subject matter jurisdiction "may be raised at any time in any court." *Johnson v. Hopkins*, No. M2012-02468-SC-S09-CV, 2013 WL 6699490, at *2 (Tenn. 2013). The issue of whether a court has subject matter jurisdiction over a particular case is a question of law, subject to *de novo* review. *Id.*

Because the issue of subject matter jurisdiction was raised in this appeal for the first time at oral argument, this Court directed the parties to file supplemental briefs addressing only the issue of subject matter jurisdiction.[20] In her supplemental brief, Ms. Hansen argues that neither the juvenile court nor the circuit court had subject matter jurisdiction over this lawsuit because:

- The juvenile court and the circuit court did not have subject matter jurisdiction over a claim for *child support*, because

    a. the petitioners requesting child support did not have "physical custody" of the child, and

---

[20] Ms. Hansen attached several documents to her appellate brief that were not made part of the record in the trial court below. As those documents are not in the official appellate record, we cannot consider them in reaching our decision. *See Reid v. Reid*, 388 S.W.3d 292, 294-95 (Tenn. Ct. App. 2012).

-16-

b. Ms. Hansen is not the legal parent of the child,
because the adoption was nullified by the Russian
Federation Supreme Court; and

• The juvenile court did not have subject matter jurisdiction over the
*breach of contract* claim.

We address each issue in turn.

### *Child Support*

Ms. Hansen first argues that neither the juvenile court nor the circuit court had subject matter jurisdiction over the Petitioners' claim for child support on behalf of the child. She asserts: "Tennessee law clearly states that in order to make a claim for child support, the claimant must have physical custody of the child." She also claims, "The law is clear that persons without physical custody of the child have no standing whatsoever to petition for child support." Because none of the Petitioners ever had "physical custody" over Justin, Ms. Hansen argues, neither the juvenile court nor the circuit court ever had jurisdiction to award child support. She maintains that Mr. Mityaev is not a proper representative for the child because the child was moved from the children's home at which he was director. Ms. Hansen contends that when the child "no longer resided at the institution where Mr. Mityayev [sic] was employed, his legal authority to represent Justin A. H. dissolved." Therefore, Ms. Hansen argues, neither the juvenile court nor the circuit court had subject matter jurisdiction to award child support on behalf of Justin in the dependency and neglect action.

To support her "physical custody" argument, Ms. Hansen relies on Tennessee Code Annotated § 36-5-101(b).[21] By its language, Section 36-5-101(b) applies when the Department of

---

[21]The statute provides:

> (b)(1) Notwithstanding any other provision of law to the contrary, neither the department of human services, nor any Title IV-D child support contractor of the department, nor any recipient of public assistance in this or any other state or territory, nor any applicant for either public assistance in this or any other state or territory or for Title IV-D child support services from the department or any other Title IV-D agency in this or any other state or territory, shall be required to demonstrate to a court or administrative tribunal that the caretaker of the child for whom child support is sought is vested with any more than physical custody of the subject child or children, in order to have standing to petition for child support from the legal parent of the child or children for whom support is sought, or to seek enforcement or modification of any existing orders involving such child or children.

(continued...)

Children's Services ("DCS") or other recipients of public assistance seek child support on behalf of a child. It states that legal custody is not a prerequisite for the child's caretaker to obtain an order for child support; the caretaker need not show "any more than physical custody of the [child]" in order to have standing to seek such support. Ms. Hansen cites no authority to support her assertion that this statute applies under the circumstances of this case.

This case is unusual because the child at issue is no longer in the United States; after Ms. Hansen sent him back to Russia, a Russian orphanage took custody of the child. The juvenile court petition identified Mr. Mityaev as the director of the orphanage where Justin was located, and Mr. Mityaev as Petitioner brought the dependency and neglect action on Justin's behalf. After the case was appealed to circuit court, the petition was amended to add Justin himself as a Petitioner through Mr. Mityaev, his next friend. "An inquiry into whether a party has standing requires a 'careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted.'" *In re Estate of Glasscock*, No. M2011-01725-COA-R3-CV, 2012 WL 5383074, at *3 (Tenn. Ct. App. June 11, 2012) (quoting *City of Brentwood v. Metro. Bd. of Zoning Appeals*, 149 S.W.3d 49, 56 (Tenn. Ct. App. 2004) (citing *Allen v. Wright*, 468 U.S. 737, 752 (1984)).

Ms. Hansen concedes that Mr. Mityaev was the proper representative for Justin when the child was in Mr. Mityaev's orphanage. In this appeal, she claims that Justin has been relocated to a different orphanage, so Mr. Mityaev is no longer the appropriate representative. The appellate record, however, contains no properly-submitted evidence to support this assertion.[22] Ms. Hansen had ample opportunity to make this argument to the trial court and submit evidence to support it; she chose not to do so.

Our review of the trial court's decision on whether Justin is a proper party and the identity of the appropriate party to represent the child in these proceedings is necessarily limited to the appellate record, *i.e.*, the trial court pleadings and the evidence in the record. *See Reid v. Reid*, 388 S.W.3d 292, 294-95 (Tenn. Ct. App. 2012). The record in this case supports the trial court's decision that Justin is a proper party to the lawsuit and that Mr. Mityaev is the appropriate representative. Accordingly, we reject Ms. Hansen's argument that neither the

---

[21](...continued)

>  (2) Legal custody of a child to whom a child support obligation is owed shall not be a prerequisite to the initiation of any support action or to the enforcement or modification of any support obligation in such cases, whether or not the obligation has been assigned to this state or any other state or territory by operation of law.

Tenn. Code Ann. § 36-5-101(b)(1) & (b)(2) (Supp. 2013).

[22]This Court denied Ms. Hansen's motion to consider the post-judgment facts upon which she now relies.

juvenile court nor the circuit court had subject matter jurisdiction to adjudicate matters involving child support based on lack of proper standing of Justin or his representatives.

Ms. Hansen also argues that neither the juvenile court nor the circuit court had jurisdiction to adjudicate the claims for child support because her adoption of Justin was nullified by the Russian Federation Supreme Court. She contends that, as a matter of law, when parental rights are terminated, all of the parent's rights and responsibilities as to the child are also terminated. *See* Tenn. Code Ann. § 36-1-113(l)(1) (Supp. 2013).

We do not disagree with the basic premise of Ms. Hansen's argument. "An order terminating parental rights shall have the effect of severing forever all legal rights and obligations of the parent . . . ." *Id.* This argument, however, does not implicate the trial court's subject matter jurisdiction, its authority to adjudicate a claim for child support. Rather, it is a *substantive defense* to a claim for child support. It might have been a terrific argument in the trial court below, had Ms. Hansen chosen to engage in the proceedings. But she cannot now assert a substantive defense to a claim under the guise of a challenge to the trial court's subject matter jurisdiction. For this reason, we must respectfully reject Ms. Hansen's argument that the annulment of her adoption of Justin by the Russian tribunal left the lower courts without jurisdiction over this action.[23]

### Breach of Contract

Ms. Hansen next argues that the juvenile court did not have subject matter jurisdiction as to the breach of contract claim. She asserts that, under Tennessee Code Annotated § 37-1-103 and 37-1-104, breach of contract claims are not among those that can be brought in juvenile court. In this case, she notes, the breach of contract claim was joined with the dependency and neglect action. Ms. Hansen asserts: "Because the law grants juvenile court continuing jurisdiction in dependent neglect cases, the breach of contract claim and the dependent neglect claim are now forever joined." She concedes that the circuit court generally has jurisdiction over breach of contract claims but contends that the joining of the breach of contract claim with the dependency and neglect action in the juvenile court defeats the jurisdiction of the circuit court in the appeal from juvenile court.

The juvenile court below recognized that it did not have jurisdiction over a breach of contract claim and stated that, for this reason, the breach of contract issues were "withdrawn" by the Petitioners at the juvenile court level. In any event, when the Petitioners filed their amended petition in circuit court in November 2011, the petition was amended to include a breach of

---

[23]Our decision herein pretermits the question of whether the decision of the Russian Federation Supreme Court should be recognized or given full faith and credit.

contract claim. Once the breach of contract claim was added, the circuit court had jurisdiction over both the appeal of the dependency and neglect petition *and* the initial filing of the breach of contract action.[24] This is analogous to amending a claim in circuit court after a *de novo* appeal from general sessions court — also a court of limited jurisdiction — to include a claim that is not justiciable in general sessions. For example, after an appeal from general sessions court to circuit court, a party can amend his petition to add claims and defenses that are outside the jurisdictional limits for general sessions court. *Ware v. Meharry Med. College*, 898 S.W.2d 181, 185 (Tenn. 1995) (citing Tenn. Code Ann. § 16-15-729). "The Tennessee Rules of Civil Procedure favor using a single proceeding to resolve all the parties' disputes on the merits." *Id.* at 186 (citing *Karash v. Pigott*, 530 S.W.2d 775, 777 (Tenn. 1975); *Quelette v. Whittemore*, 627 S.W.2d 681, 682 (Tenn. Ct. App. 1981)). Therefore, regardless of whether the juvenile court had subject matter jurisdiction over the Petitioners' breach of contract claim, the circuit court had jurisdiction to adjudicate all of the claims that were asserted in the amended circuit court petition.

Therefore, we reject Ms. Hansen's argument that this case should be dismissed based on jurisdictional grounds. We now turn to the substantive issues raised on appeal.

### Post-Judgment Motions

#### *Motion to Set Aside Default Judgment*

Ms. Hansen argues that the trial court erred in denying her motion to set aside the default judgment. On appeal, we review the denial of a motion to set aside a default judgment for abuse of the trial court's discretion. *Reynolds v. Battles*, 108 S.W.3d 249, 251 (Tenn. Ct. App. 2003) (citing *Tenn. Dep't of Human Servs. v. Barbee*, 689 S.W.2d 863, 866 (Tenn. 1985)). "In reviewing a trial court's decision to grant or deny relief pursuant to Rule 60.02, we give great deference to the trial court." *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003). An abuse of discretion occurs only if the trial court has "applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." *Id.* (citations omitted). "The abuse of discretion standard does not permit an appellate court to merely substitute its judgment for that of the trial court." *Id.*

"In deciding whether to grant a rule 60.02 motion to set aside [a] default judgment, courts consider three criteria: 1) whether the default was willful; 2) whether the defendant has asserted a meritorious defense; 3) the amount of prejudice which may result to the non-defaulting party." *Reynolds*, 108 S.W.3d at 251 (citing *Barbee*, 689 S.W.2d at 866). The

---

[24]We express no opinion on the propriety of joining a breach of contract claim with a dependency and neglect action, as resolution of this question is not necessary to determine subject matter jurisdiction.

first element — willfulness — is a threshold inquiry when a party seeks relief from a default judgment based on excusable neglect. *Discover Bank v. Morgan*, 363 S.W.3d 479, 493-94 (Tenn. 2012). "If the court finds that the defaulting party has acted willfully, the judgment cannot be set aside on 'excusable neglect' grounds, and the court need not consider the other factors." *Id.* at 494. "Deliberate choices" and "conduct that is flagrant and unexplained" are characteristics of willful conduct. *Id.* at 493.

To some extent, the default judgment entered against Ms. Hansen was a Rule 37 sanction for her failure to cooperate in discovery. *See* Tenn. R. Civ. P. 37.02. Trial courts are afforded wide discretion to determine the appropriate sanction for abuse of the discovery process. *Mercer v. Vanderbilt Univ.*, 134 S.W.3d 121, 133 (Tenn. 2004). "The trial court's determination of the appropriate sanction to be imposed will not be disturbed on appeal unless the court commits an abuse of discretion." *Lyle v. Exxon Corp.*, 746 S.W.2d 694, 699 (Tenn. 1988) (citing *Brooks v. United Unif. Co.*, 682 S.W.2d 913, 915 (Tenn. 1984)).

In its July 19, 2012 order, the trial court found specifically that Ms. Hansen acted willfully in failing to file an answer, respond to written discovery, appear at her deposition, or appear at the March 7, 2012 hearing. A trial court's finding of "willfulness" is a factual finding. We review this and all other factual findings *de novo* on the record, presuming the trial court's finding to be correct unless the evidence preponderates otherwise. *In re W.B., IV*, Nos. M2004-00999-COA-R3-PT & M2004-01572-COA-R3-PT, 2005 WL 1021618, at *9 (Tenn. Ct. App. Apr. 29, 2005); Tenn. R. App. P. 13(d).

After a careful review, we find that the record contains substantial evidence to support the trial court's finding that Ms. Hansen's conduct was willful. She chose not to file an answer to the amended petition, declined to answer written discovery, failed to appear for her noticed deposition on at least three occasions, and disobeyed the trial court's direct order to appear in person to request court-appointed counsel. Days after Attorney Smith mailed Ms. Hansen the trial court's scheduling order, which indicated that Ms. Hansen had to complete discovery and appear for a deposition, Ms. Hansen fired Attorney Smith and did not comply with the directives in the scheduling order. Ms. Hansen was notified of the hearing on damages; she hired a court reporter to record it but did not show up to participate in it. As the trial court commented, Ms. Hansen simply abandoned the lawsuit. Ms. Hansen's recalcitrance is evident in her March 6, 2012 letter to the trial court, explaining the reasoning for her decisions. In the letter, Ms. Hansen claimed on one hand that financial hardship prevented her from fulfilling her responsibilities in the litigation. At the same time, however, she asserted defiantly that she refused to cooperate in discovery because "the Petitioners have no legal authority to obtain sensitive and invasive information from me," accused the trial judge of conspiring with the Petitioners, and declared that any order entered by the trial court would

be based on fraud or abuse of judicial power. All of this says loudly and clearly that Ms. Hansen's failure to participate in the lawsuit was a deliberate decision.

Ms. Hansen's motion to set aside the default judgment listed several other reasons for her failure to cooperate in discovery or follow the trial court's orders. She claimed that her conduct was due to financial burdens, mental issues, and the like. The record indicates that Ms. Hansen personally appeared at the hearing to testify about these assertions; however, since the appellate record does not include a transcript of the hearing, we do not know what Ms. Hansen said in her testimony. Regardless, the trial court apparently did not find Ms. Hansen's testimony to be credible. As an appellate court, we afford great deference to trial court decisions that are based on the trial court's assessment of witnesses' credibility; we will not reverse a decision based on witness credibility absent clear and convincing evidence to the contrary. *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). Without a transcript, we must presume that the trial court's decision to deny the motion to set aside is supported by the evidence. *In re M.L.D.*, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005).

In any event, because the record supports the trial court's factual finding that Ms. Hansen's conduct was willful, we need not examine the other factors to determine whether she has established excusable neglect. *Discover Bank*, 363 S.W.3d at 494. Therefore, under the circumstances of this case, we cannot conclude that the trial court abused its discretion in denying Ms. Hansen's motion to set aside the default judgment, and so affirm the trial court's decision.

### Motion to Alter or Amend Final Judgment

A trial court's denial of a motion to alter or amend a final order pursuant to Rule 59 is also reviewed under an abuse of discretion standard. *Chambliss v. Stohler*, 124 S.W.3d 116, 120 (Tenn. Ct. App. 2003).

On appeal, Ms. Hansen's challenge to the trial court's denial of her motion to alter or amend is based wholly on the premise that the trial court erred in refusing to set aside the default judgment. Neither in this Court nor in the lower court did Ms. Hansen question the sufficiency of the proof on damages, and she makes no other challenge to the trial court's decision apart from her insistence that the default judgment should have been set aside.[25] We have already affirmed the trial court's denial of Ms. Hansen's motion to set aside the default judgment. Because Ms. Hansen makes no other argument on this issue, we also affirm the trial court's denial of the motion to alter or amend the final order.

---

[25]An issue not raised in the trial court will not be considered by the appellate court on appeal. *See In re M.L.P.*, 281 S.W.3d 387, 394 (Tenn. 2009).

## CONCLUSION

The decision of the trial court is affirmed. Costs on appeal are to be taxed to Respondent/Appellant Torry Hansen and her surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE